UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| PATRICIA P., | ) |
| | ) |
|       Plaintiff | ) |
| | ) |
| v. | )   No. 1:21-cv-00210-JAW |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of | ) |
| Social Security, | ) |
| | ) |
|       Defendant | ) |

**REPORT AND RECOMMENDED DECISION**

The Plaintiff in this Disabled Widow's Benefits and Supplemental Security Income appeal contends that the Administrative Law Judge (ALJ) erred by assessing a residual functional capacity (RFC) unsupported by substantial evidence. *See* Statement of Errors (ECF No. 11). I agree and recommend that the Court vacate the Commissioner's decision and remand the matter for further proceedings consistent with this decision.

**I. Background**

After the Plaintiff's claims were denied at the initial and reconsideration levels, she requested a hearing before an ALJ. *See id.* at 131-60, 164-75, 196-98. Following that hearing, the ALJ issued a decision in November 2020 finding the Plaintiff had the severe impairments of depressive, somatic, and personality disorders and the RFC to perform work at all exertional levels, understand and remember simple work tasks, work in two-hour blocks performing simple tasks

1

during a normal work schedule, interact with coworkers and supervisors, have occasional contact with the public, and adapt to simple changes in her work setting.[1] *See id.* at 23-34. Based on vocational testimony that a significant number of jobs were available to a person with such an RFC, the ALJ found the Plaintiff not disabled. *See id.* at 33. The Appeals Council denied the Plaintiff's request to review the ALJ's decision, *see id.* at 1-4, making that decision the final determination of the Commissioner, *see* 20 C.F.R. §§ 404.981, 416.1481.

## II. Standard of Review

A final decision of the Commissioner is subject to judicial review to determine whether it is based on the correct legal standards and supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). Substantial evidence in this context means evidence in the administrative record that a reasonable mind could accept as adequate to support an ALJ's findings. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). If an ALJ's findings are supported by substantial evidence, they are conclusive even if the record could arguably support a different result. *See Irlanda Ortiz v. Sec'y of Health & Hum. Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). But an ALJ's findings "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

---

[1] The ALJ also limited the Plaintiff to work not involving concentrated exposure to pulmonary irritants. *See* Record at 28.

### III. Discussion

In determining the Plaintiff's RFC, the ALJ relied primarily on the opinion of nonexamining consultant Leigh Haskell, Ph.D., who reviewed the Plaintiff's claims at the reconsideration level in February 2019. *See* Record at 164-75. The ALJ found Dr. Haskell's opinion "persuasive" because it was "consistent with and supported by the objective treatment record," *id.* at 30, and largely adopted Dr. Haskell's RFC assessment as his own, *compare id.* at 28 *with id.* at 167-68, 173-74.[2]

The ALJ also considered, among other evidence, the opinion of James D. Thomas, Ph.D., who performed a neuropsychological evaluation of the Plaintiff over the course of several sessions in 2020. *See id.* at 981-98. The ALJ found Dr. Thomas's opinion "somewhat persuasive," explaining,

> Dr. Thomas includes a warning on the validity of the assessment, as the [Plaintiff] produced a "relatively large number of idiopathic errors" and encouraged cautious interpretation of the data but that it was suggestive of an impairment of divided attention. He also noted that although the [Plaintiff] gave adequate effort in the intellectual, neurocognitive and academic testing, the validity of personality testing was weaker due to a defensive approach and some inattention to the item context. He stated that the [Plaintiff] did not demonstrate many behavioral symptoms consistent with the presence of neurocognitive impairments, did not have a pervasive difficulty understanding or recalling task instructions, and her attention was unremarkable to observation during testing. During the initial examination, he noted that the [Plaintiff] was able to maintain cognitive set without difficulty, her autobiographical recall was detailed and recent memory was intact, and she demonstrated only a few tangential responses during the initial exam and was easily redirected.

---

[2] Unlike the ALJ, Dr. Haskell did not limit the Plaintiff to working in two-hour blocks. *Compare* Record at 28 *with id.* at 167-68, 173-74.

*Id.* at 32. Ultimately, the ALJ found that Dr. Thomas's opinion was "consistent with the limitations set forth by [Dr. Haskell] at reconsideration" even though Dr. Thomas did "not include specific functional language." *Id.*

The Plaintiff takes issue with the ALJ's reliance on Dr. Haskell's opinion, arguing that the opinion was based on a significantly incomplete medical record because the results of Dr. Thomas's neuropsychological evaluation were not available at the time of Dr. Haskell's review. *See* Statement of Errors at 5-8. She also points out that Dr. Thomas made several novel diagnoses and observations based on his testing and argues that the ALJ was not qualified to determine that these findings were consistent with Dr. Haskell's opined functional limitations. *See id.* at 8-11.

The Commissioner, by contrast, argues that the ALJ was perfectly competent to assess the materiality of Dr. Thomas's later-submitted opinion and that it was reasonable for the ALJ to rely on Dr. Haskell's opinion because Dr. Thomas's report was not materially different from the evidence that Dr. Haskell reviewed. *See* Opposition (ECF No. 13) at 14-18. In support of this argument, the Commissioner draws parallels between some of Dr. Thomas's milder findings and other less favorable evidence in the record. *See id.* at 14-16.

The Plaintiff has the better argument.

The weight that can be given to a nonexamining medical consultant's opinion depends on several factors, including "the completeness of the consultant's review of the full record and whether portions of the record unseen by the consultant reflect material change or are merely cumulative or consistent with the preexisting record

4

and/or contain evidence supportably dismissed or minimized by the" ALJ. *Norman W. T. v. Kijakazi*, No. 2:20-cv-00275-NT, 2021 WL 5050061, at *5 (D. Me. Oct. 31, 2021) (rec. dec.), *aff'd*, 2022 WL 19628 (D. Me. Jan. 3, 2022) (cleaned up).

In this case, Dr. Haskell reviewed the medical record as it existed in February 2019, concluded that the Plaintiff was suffering from depressive, personality, and somatic disorders, and assessed limitations flowing from those impairments. *See* Record at 164-75. In her opinion, Dr. Haskell noted that the Plaintiff had reported she could "pay attention for a 'long time'" and that an earlier examiner had noted no concentration limitations. *Id.* at 168, 174. Dr. Thomas, on the other hand, evaluated the Plaintiff in 2020 and diagnosed her with frontal lobe/executive system, attentional, visual-spatial, and motor impairments, noted that her IQ score was in the bottom tenth percentile, and found her attentional impairment to be "sufficiently severe" to have likely affected other aspects of her cognition. *Id.* at 981, 989, 993-95. He further opined that these "intellectual and attentional problems . . . would be barriers to competitive employment" and indicated that the Plaintiff should avoid fast-paced jobs because of her "very slow processing." *Id.* at 996.

Dr. Haskell obviously did not see Dr. Thomas's later report, and the Commissioner does not point to any evidence available to Dr. Haskell that showed intellectual and attentional impairments like the ones diagnosed by Dr. Thomas. Dr. Haskell, therefore, cannot be said to have assessed limitations flowing from those impairments or that otherwise accounted for Dr. Thomas's findings and observations

relating to those impairments. *Cf. John W. D. v. Saul*, No. 2:19-cv-00478-GZS, 2020 WL 6709556, at *4 (D. Me. Nov. 15, 2020) (rec. dec.) (holding that when agency nonexamining consultants did not find a claimant's autism spectrum disorder to be a medically determinable impairment, "they necessarily did not assess limitations flowing therefrom"), *aff'd*, 2020 WL 7048259 (D. Me. Dec. 1, 2020). Furthermore, both sides agree that Dr. Thomas did not specifically address the Plaintiff's RFC— i.e., that he did not fully translate his findings into work-related functional limitations. *See* Statement of Errors at 9; Opposition at 16. This means that the ALJ must have relied on his own interpretation of Dr. Thomas's findings when concluding that they were adequately accounted for by Dr. Haskell's opined limitations.

      The problem is the ALJ was not qualified to interpret Dr. Thomas's findings. *See, e.g.*, *Richard S. v. Kijakazi*, No. 1:20-cv-00244-JDL, 2021 WL 4739493, at *4 (D. Me. Oct. 11, 2021) (rec. dec.) (noting that commonsense would not have enabled an ALJ to translate the findings in a neuropsychological evaluation report into specific functional limitations), *aff'd*, ECF No. 21 (D. Me. Nov. 4, 2021). And although the Commissioner is correct that an "ALJ is perfectly competent to resolve conflicts in expert opinion evidence regarding RFC by judging whether later submitted evidence is material," *Dustin T. v. Saul*, No. 1:20-cv-00310-GZS, 2021 WL 3047257, at *5 (D. Me. July 20, 2021) (rec. dec.), *aff'd*, 2021 WL 3494590 (D. Me. Aug. 9, 2021) (cleaned up), the ALJ here implicitly acknowledged the materiality of Dr. Thomas's opinion by purporting to give it some weight, *see* Record at 32. Moreover, the ALJ cannot be said to have resolved the conflicts between Dr. Haskell's and Dr. Thomas's

opinions when he did not even acknowledge the significant differences between them. *See Boothby v. Berryhill*, No. 2:16-cv-00599-JHR, 2018 WL 1144371, at *3 (D. Me. Mar. 2, 2018) ("The ALJ can hardly be said to have resolved the conflict between [two medical experts'] findings when he failed to recognize that such a conflict existed . . . .").

At bottom, the ALJ relied on an earlier opinion despite recognizing the significance of later submitted evidence and then attempted to translate that later submitted evidence into functional terms himself.  These errors leave his RFC assessment unsupported by substantial evidence, and remand is therefore required.[3] *See Kenneth A. W. v. Kijakazi*, No. 1:20-cv-00419-GZS, 2022 WL 278469, at *5 (D. Me. Jan. 30, 2022) (rec. dec.) (holding that remand was required when an ALJ's RFC was unsupported by substantial evidence because it "undermined the relevance of the vocational expert testimony on which the ALJ relied in finding the [claimant] capable of performing work existing in significant numbers in the national economy"), *aff'd*, 2022 WL 458268 (D. Me. Feb. 15, 2022).

---

[3] In light of this conclusion, I need not reach the Plaintiff's other asserted points of error. *See* Statement of Errors at 11-16.  I note, however, that she conceded her constitutional argument during oral argument.

7

## IV. Conclusion

For the foregoing reasons, I recommend that the Commissioner's decision be **VACATED** and the case **REMANDED** for further proceedings consistent with this decision.

### *NOTICE*

*A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the District Court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the District Court and to appeal the District Court's order.*

Dated: July 28, 2022

/s/ Karen Frink Wolf
United States Magistrate Judge